PAUL L. REIN, Esq. (SBN 43053)
AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:   510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
PAUL SPECTOR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| PAUL SPECTOR<br><br>    Plaintiff,<br><br>    v.<br><br>PORT OF OAKLAND,<br><br>    Defendant. | CASE NO.<br><u>Civil Rights</u><br><br>COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:<br><br>1. Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)<br><br>2. Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)<br><br>3. Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)<br><br><u>DEMAND FOR JURY TRIAL</u> |
|---|---|

Plaintiff PAUL SPECTOR complains of Defendant PORT OF OAKLAND, and alleges as follows:

1.     **INTRODUCTION:**  On January 9, 2022, physically disabled Plaintiff, Paul Spector, went with his girlfriend and his service dog Coco to Middle Harbor Shoreline Park located at 2777 Middle Harbor Road, Oakland, CA 94607 to enjoy a walk in the park and the view of the bay from a three-story lookout tower at the Park.  While he was enjoying his walk, two different Port of Oakland employees told Plaintiff that he had to leave the Park because he was accompanied by his service dog.  Both employees also stated that they did not know about the American's with Disabilities Act and threatened to call the police if Plaintiff did not leave the

1
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Park.

2. As a result of Defendant's illegal acts, Plaintiff suffered denial of his civil rights and suffered physical, mental and emotional damages. Plaintiff wants to return to the Park to enjoy the beauty of the Oakland shoreline and see the view from the three-story structure in the Park, but he cannot do so until Defendant's policies at the Shoreline Middle Harbor Park are changed to welcome disabled individuals who use service dogs, and to provide necessary employee training and/or re-training. He has brought this lawsuit to force Defendant to change its discriminatory and illegal policies, and compensate him for ejecting him from the property because he is disabled and uses a service dog. Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the Park.

3. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343. This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

4. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

5. **INTRADISTRICT:** This case should be assigned to the Oakland intradistrict because the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

6. **PARTIES:** Plaintiff Paul Spector is a "qualified" disabled person and veteran who uses the assistance of a service dog for mobility. Plaintiff was injured in a very serious car accident in 2012 which left him with residual pain and weakness in his left knee and arthritis, all of which cause him difficult in walking, balancing and standing for long periods of time. Plaintiff's knee can give out while he is walking which could cause him to fall down. Plaintiff relies upon his service dog, a Belgium Shephard named "Coco," to assist him with certain tasks including pulling him upstairs and hills while they are walking. He also can assist Plaintiff with stabilizing his balance. Coco has been trained to walk on Plaintiff's left side, and when Claimant's knee begins to weaken, Coco leans his considerable weight against Plaintiff and

allows him to lean against Coco which provides Plaintiff with necessary stability and support to take some pressure off of his weak left knee. Additionally, Coco is trained to assist Plaintiff in getting down to the floor and back up when he needs to retrieve dropped objects. Coco was professionally trained to be service dog. Additionally, Plaintiff continues to reinforce the training with Coco daily. Plaintiff is a qualified person with a disability as defined under federal and state law. 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

7. Defendant PORT OF OAKLAND, is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business, property and building located at 2777 Middle Harbor Road, Oakland, CA 94607, known as the Middle Harbor Shoreline Park. An additional unnamed security company whose identity is unknown to Plaintiff at this time but who was contracted by Defendant may be added to this action upon discovery of the company's name and more precise understanding of its involvement with the incident.

8. The Park is a place of "public accommodation" and a "business establishment" which rents out picnic areas to the public subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

9. **GOVERNMENT CLAIM**: On or about March 21, 2022, Plaintiff made a claim to the Port of Oakland, a government entity, which was expressly rejected by said entity on May 9, 2022.

10. **FACTUAL STATEMENT:** Plaintiff Paul Spector has been working with his service dog Coco for almost two years. Coco is a Belgium Shephard who was both professionally trained and individually trained to be a service dog. Plaintiff has also trained and continues to train Coco to serve his specific needs throughout their relationship. Coco is specifically trained to assist Plaintiff with mobility, including stabilizing him if his knee gives out, assisting him up hills and stairs, and assisting him in bending down to retrieve objects at floor level.

11. Coco is a working dog; he is not a pet. Plaintiff and Coco have trained extensively together, and they supplement that training daily. Plaintiff takes Coco everywhere with him in public. It is important they stay together at all times because (a) Coco provides important

1  services for Plaintiff; and (b) it is part of the training and bonding requirement that they be
2  together constantly to maintain their bond.  Where Plaintiff goes, Coco goes.  Below are
3  photographs of Coco as he looked the day he and Plaintiff were asked to leave the Park:



15          12.     On January 9, 2022, Plaintiff and his girlfriend decided to go to for a walk at
16  Middle Harbor Shoreline Park, located at 2777 Middle Harbor Road, Oakland, CA 94607.
17  Although Plaintiff had never been to Middle Harbor Shoreline Park, he had seen the park many
18  times from the ferry, and he noticed that there was three-story lookout tower at the park.  Plaintiff
19  was interested in climbing the tower to take in the views of the bay from that height. However, he
20  knew that he would need Coco's assistance in climbing the stairs.
21          13.     Plaintiff, his girlfriend, and Coco drove from their home to Middle Harbor
22  Shoreline Park.  Plaintiff parked his car in the parking lot, got Coco out of the car, and the group
23  started walking on a trail towards the bay.  While they were walking, a security guard, who on
24  information and belief is employed by the Port of Oakland or Defendant's agent, approached
25  them in a vehicle,  stopped them, and informed Plaintiff that no dogs were allowed in the Park.
26  Plaintiff calmly explained that Coco is a service who is legally allowed to accompany him
27  anywhere the general public is allowed in public accommodations and government facilities.  At
28  the time, Coco was wearing a vest which clearly identified him as a service dog.  The security

guard told Plaintiff that regardless of Coco's status as a service dog, he was not allowed in the park.  The security guard also told Plaintiff that he had to leave the park.  He also threatened to call the police if Plaintiff did not leave.  The security guard then got back in his vehicle and drove off.

14. Plaintiff, his girlfriend, and Coco continued on their walk through the park toward the bay.  Plaintiff was not deterred by the security guard's threats because he knew he was following the law and if the police were called, he thought they would be able to explain the laws surrounding service dogs to the security guard.

15. After walking for a short while longer, the group was approached by a second security guard who pulled up next to them in a truck marked "Port of Oakland."  The second security guard got out of his car and told Plaintiff that he would have to leave because he was accompanied by a dog.  Plaintiff again informed the second security guard that Coco is a service dog, to which the security guard responded, "Yeah, but we can't have any dogs in the Park."  Plaintiff calmly explained that service dogs, like Coco, are legally allowed to accompany him anywhere the general public is allowed in public accommodations and government facilities.  The security guard continued to insist that Plaintiff and Coco leave.  Plaintiff then asked the security guard if he had ever heard of the ADA.  The security guard said no, and then coerced Plaintiff to leave the Park with threats to call the police.  Much of this conversation was captured on video take by Plaintiff.

16. Plaintiff intends to return the Park and its facilities as he still has not been able to take in the views from the observation tower at the Park, but only *after* Defendants have implemented proper service animal policies and training of their staff.  Plaintiff is deterred from returning to the Park until these policies and training are in place.

//
//
//
//
//

**FIRST CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

17. Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 16 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

18. Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places." Civil Code § 54(a).

19. Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

20. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

21. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

22. Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

23. Middle Harbor Shoreline Park is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owners, operators, lessors or lessees of the public accommodation.

24. Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation and thereby deny Plaintiff his right of entrance into its public accommodation with his service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation based upon Defendant's illegal prohibition of his legally protected use of his service dog. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should he attempt to return to these facilities. Plaintiff is unable to return to the Park until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since January 9, 2022, all to his statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

25. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are physically disabled, including mobility disabled individuals who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that he is a person with disabilities who requires the assistance of a service animal.

26. Plaintiff wishes to return to use the Park facilities but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably

cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to the Park and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled persons and disabled individuals who require the assistance of a service animal.

27. The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.   As to those of the Defendant that currently own, operate, and/or lease (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

28. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

29. **DAMAGES:** As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated.  Defendant's actions and omissions to act constitute discrimination against

Plaintiff on the basis that he was and is physically disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to use the Park and will continue to cause him damages each day these barriers to access and policy barriers continue to be present.

30. At all times herein mentioned, Defendant knew, or in the exercise of reasonable diligence should have known, that its practices at the subject facilities violated disabled access requirements and standards, and would have a discriminatory effect upon Plaintiff and upon other disabled persons who work with service dogs, but Defendant has failed to rectify the violations, and presently continues a course of conduct of maintaining policy barriers that discriminate against Plaintiff and similarly situated disabled persons.

31. Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168, 177 (1990)), Defendant's behavior was intentional. Defendant was aware and/or were made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

32. **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

33. Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on his deterrence from returning to Middle Harbor Shoreline Park.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**SECOND CAUSE OF ACTION:
VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED
BY CIVIL CODE SECTION 51(f)**

34. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 33 of this Complaint and incorporates them herein as if separately re-pleaded.

35. At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

36. California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

37. Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

38. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

39. The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52. As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory, and compensatory damages to Plaintiff, according to proof.

40. Defendant, in engaging in the conduct set forth above, refused to do business with Plaintiff and refused Plaintiff service. Plaintiff alleges on information and belief that such refusal and denial of service was due to his disability and use of his service dog in violation of Civil Code § 51.5.

41. **FEES AND COSTS:** As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

42. Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

### THIRD CAUSE OF ACTION:
### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990
### (42 USC §§ 12101 *et seq*.)

43. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 42, above, and incorporates them herein by reference as if separately repled hereafter.

44.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

45.     At all times herein mentioned, Plaintiff was entitled to the protections of the "Public Services" provisions of Title II of the ADA, Subpart A, which prohibits discrimination by any public entity as defined by 42 USC section 12131.  Pursuant to 42 USC 12132, section 12132 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the "services, programs or activities" of a public entity, or be subjected to discrimination by such entity.  Plaintiff was at all times relevant herein a qualified individual with a disability for all purposes under the ADA.

46.     In violation of Title II of the ADA, Defendant has failed to ensure that individuals with physical disabilities such as the Plaintiff herein are not excluded from "services, programs and activities" at the subject facilities and property.  By reason of Defendant's failure to remove policy barriers to access at the subject facilities so as to render them "accessible to and useable by" disabled persons who use service dogs, despite actual notice of the inaccessible conditions, and by its policy decisions as above-described, including acts and omissions by any predecessors in interest, Defendant has discriminated against Plaintiff in violation of Title II of the ADA and the regulations adopted to implement the ADA.  With relation to damages claimed under Title II of the ADA, each such instance of discrimination is alleged to have been intentional and/or has been created and maintained with deliberate indifference to the effect upon Plaintiff and other similarly disabled persons.  Further, Defendant continues to maintain the barriers to access at the

Park despite notice from Plaintiff of those barriers through his government claim, and Defendant refused to engage in any pre-litigation discussions with Plaintiff to remedy those barriers to access.

47. As a result of such intentional discrimination, in violation of section 12132 of the ADA, Plaintiff is entitled to the remedies, procedures and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 USC 794a), as provided by section 12133 of the ADA

48. On information and belief, to the date of filing of this Complaint, Defendant has failed to make the facilities and property as described herein accessible to and usable by physically disabled persons who use service animals, as required by law, and have failed to adopt policies to assure that disabled persons are provided full and equal access, including policies and regulations protecting the use of service dogs in public accommodations.

49. Plaintiff requests that an injunction be ordered requiring that Defendant make all such facilities and properties herein described accessible to and usable by mobility impaired disabled persons and their service dogs.

50. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

51. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

52. Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service-animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

53. Defendant has a policy and practice of denying and restricting access to patrons with service animals.

54. On information and belief, as of the date of Plaintiff's most recent visit to the Park on or about January 9, 2022, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

55. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

56. **DAMAGES:** Damages are available under the Title II of the ADA upon a showing of intentional discrimination. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2); *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998); *Alexander v. Sandoval*, 531 U.S. 1049, 1517 (2001). In order to prove intentional discrimination, Plaintiff must show that Defendant acted with "deliberate indifference" in violating his rights under Title II of the ADA. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

> Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1988) . . . When the plaintiff has alerted the public entity to his need for accommodation (**or where the need for accommodation is obvious, or**

**required by statute or regulation**), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.

*Id.* 260 F.3d at 1139.

57. Defendant had a statutory duty to ensure that its programs are readily accessible to persons with disabilities who use service dogs such as Plaintiff. 29 C.F.R. § 35.130(b)(7); *Fry v. Napoleon Community Schools*, 137 S.Ct. 743, 749-750 (2016) (citing *Sullivan v. Vallejo City Unified School Dist.*, 731 F. Supp. 947, 961-962). Defendant refused to allow Plaintiff to use the services at the Park with his qualified service dog despite Plaintiff's clear explanation that Coco is a service dog. The need for accommodation in this matter is both "clearly obvious" and "required by statute or regulation," and therefore meets and likely exceeds the standard for an award of damages under the deliberate indifference standard. *Duvall*, 260 F.3d at 1139. Further, Defendant was on *actual* notice of the need for accommodation because Plaintiff explicitly informed at least two of Defendant's employees that he needed an accommodation to allow him to use the Park with his service dog due to his disability. Defendant received this information and among the possible alternatives available, they then deliberately denied Plaintiff access to the Park.

58. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate intentional discrimination toward Plaintiff and deliberate indifference for his rights and safety. Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on his deterrence from returning to the Park.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the

State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Paul Spector prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

   a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

   b. To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded when he returns to visit the park;

   c. That the Court issue preliminary and permanent injunction directing Defendant as the public entity responsible for the policies and practices related to providing full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

   d. An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of all appropriate damages, including but not limited to statutory damages, general damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award of civil penalty as against Defendant under California Penal Code § 365.5(c);

1      4.      An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

       5.      An award of prejudgment interest pursuant to Civil Code § 3291;

       6.      Interest on monetary awards as permitted by law; and

       7.      Grant such other and further relief as this Court may deem just and proper.

Date: June 7, 2022                                  REIN & CLEFTON

                                                    */s/ Aaron M. Clefton*
                                                    By AARON M. CLEFTON, Esq.
                                                    Attorneys for Plaintiff
                                                    PAUL SPECTOR

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: June 7, 2022                                  REIN & CLEFTON

                                                    */s/ Aaron M. Clefton*
                                                    By AARON M. CLEFTON, Esq.
                                                    Attorneys for Plaintiff
                                                    PAUL SPECTOR